IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED

OCT - 2 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JANINE PERRY WEBER,

    **Plaintiff**

v.                            CIVIL NO. 2:13cv31

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY
(dba Lincoln Financial Group),
and
MELISSA OLIVER,

    **Defendants.**

## OPINION & ORDER

This matter comes before the Court upon Janine Perry Weber's ("Weber") Motion to Dismiss "Counterclaim" of Melissa Sue Dancy Oliver Pursuant to F.R.C.P. Rules 12(B)(1) and 12(B)(6) ("Motion to Dismiss"), filed May 3, 2103. ECF No. 22. The counterclaim of Melissa Sue Dancy Oliver ("Oliver") asks that the Court find fraudulent certain transfers, namely a change of beneficiary status in a life insurance policy and a different claim of fraudulent transfers of silver bars and cash from her husband to her mother-in-law, Weber. ECF No. 16. Weber asks that the Court dismiss the counterclaim filed by Oliver on grounds of lack of jurisdiction and failure to state a claim upon which relief could be granted under applicable Virginia law. For the reasons set forth in this Order, the Motion to Dismiss is **GRANTED** as to Melissa Oliver's claim concerning the life insurance policy, which claim is dismissed with prejudice, and **GRANTED** as to Melissa Oliver's claims to the silver bars and cash, which claims are dismissed without prejudice by virtue of lack of jurisdiction.

1

## I. PROCEDURAL HISTORY

On January 18, 2013, Weber filed a Complaint against Lincoln National Life Insurance Company ("Lincoln"). ECF No. 1. On February 15, 2013, Lincoln filed an Answer, Motion to Join Party on Counterclaim, and Counterclaim in Interpleader. ECF's No. 5 and 7. Subsequently the Court entered an order granting Lincoln's Motion for Joinder on March 4, 2013, adding Oliver as a party to the proceedings. ECF No. 13. On April 12, 2013, Oliver filed an Answer to Counterclaim and Interpleader and a Counterclaim of her own ("Oliver's Counterclaim"). ECF No. 16. On May 3, 2013, Weber then filed her Motion to Dismiss. ECF No. 22. Oral argument was heard on the Motion to Dismiss on October 1, 2013.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a claim due to the Court's lack of subject matter jurisdiction. Federal courts may exercise "only the jurisdiction authorized them by the United States Constitution and by Federal statute." *Bowles v. Russell*, 551 U.S. 205, 127 S.Ct. 2360 (2007). Accordingly, the Court must "presume that a case lies outside of its limited jurisdiction unless and until jurisdiction is shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008). Plaintiff bears the burden of proving that this Court has subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Rule 12(b)(6) permits a defendant to move for dismissal of a claim for failure to state a claim upon which relief can be granted. "Importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Consequently, a Rule 12(b)(6) motion should only be granted if, after accepting all well pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's

2

favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Id.*

## III. FACTUAL BACKGROUND

Given the standard for reviewing a Rule 12(b)(6) motion, the Court will accept Oliver's factual allegations as true for the purposes of this Order. The following alleged facts are drawn from Oliver's pleadings and are not accepted as true for any purpose beyond the Court's present ruling on Weber's Motion to Dismiss.

According to the allegations John Patten Oliver, Jr. ("Decedent") and Melissa Oliver were married in July, 1998. On or about October 14, 2005, they met with their family financial advisor, Thomas Hill, CPA ("Hill"). The couple had recently purchased their home in Farmville, Virginia, and some land in Kentucky. As part of their family financial planning, the parties decided to purchase life insurance on each other. Hill, during a joint meeting with the couple, completed the application for the policy at issue in this case for Decedent. The application was submitted to Lincoln by Hill and life insurance policy #T201125038 was issued naming Decedent as the insured and listing Oliver as the beneficiary. Since the issuance of the policy and until Decedent's death, all premiums for said policy were paid for with marital assets of Husband and Wife out of their joint bank account.

During 2010, the couple purchased silver bars, valued at $10,000, as an investment. Throughout the marriage Decedent also kept large sums of cash underneath their bed in the marital home.

Also according to the allegations, the couple began experiencing marital discord in the spring of 2012. They had discussed the possibility of separating and both acknowledged that the possibility of divorce was imminent. In the months leading up to Decedent's death he had multiple conversations with his mother, Weber, regarding the fact that a separation and divorce

3

was likely. Decedent also informed Weber that he was changing the beneficiary designation on the Lincoln life insurance policy.

On or about July 3, 2012, Decedent removed the cash underneath the couple's bed and gave it to Weber. The total amount of cash was around $50,000. Decedent also gave the silver bars to Weber, valued at $10,000. Weber gave no consideration for the gifts.

On July 10, 2012, without Oliver's knowledge or consent, Decedent submitted a "Life Beneficiary Name Change" form to Lincoln, requesting that the beneficiary of the policy be changed from Oliver to Weber. Weber gave no consideration for the transfer. On or about July 12, Decedent placed an order for a shotgun from an on-line gun shop, which he received on July 19. On July 20 Lincoln issued a letter to Decedent confirming receipt of his request to change the beneficiary of the policy to Weber. Decedent died from a self-inflicted gunshot wound that same day, dying intestate.

The allegations further assert that during the weeks preceding Decedent's death Oliver had spent the workweeks in New York on business and had been shuttling back and forth to Farmville via train. At the time of Decedent's death the couple was still living in the marital residence in Farmville. Oliver did not have any knowledge of or consent to the transfers in question. Weber, however, did have knowledge at the time of the transfers that Oliver had no knowledge of the transfers and that they were made in order to divest Oliver of her interest in the life insurance policy, the silver bars, and the cash.

Following Decedent's death both Oliver and Weber made requests to Lincoln for disbursement of the life insurance proceeds, totaling $500,000. Due to the conflicting claims and the potential for double liability, Lincoln refused to disburse the proceeds to either party, leading to the current proceeding.

4

IV. DISCUSSION[1]

### A. RULE 12(B)(1) DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION

Weber first asks that Oliver's Counterclaim be dismissed because the Court lacks jurisdiction over the claims. Mot. to Dismiss, ECF No. 22. Oliver asserts that the counterclaims are compulsory, and as a result the Court has ancillary jurisdiction. Oliver's Countercl. at 7, ECF No. 16. In the alternative, if the Court finds that the counterclaims are not compulsory but rather permissive, Oliver asserts that there is an independent jurisdictional base via diversity jurisdiction. *Id.* at 8. The Court finds that it has jurisdiction as to the insurance policy claim but not as to the claims concerning the silver bars or the cash.

#### 1. Subject Matter Jurisdiction as to the Insurance Policy

The Court has jurisdiction over the original claim concerning the insurance policy through diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). There is diversity of citizenship: Weber is a resident of North Carolina, Lincoln is a resident of Indiana, and Oliver is a resident of Virginia.[2] The amount in controversy as to the insurance policy is $500,000 plus interest that has accrued while Lincoln has refrained from disbursing the funds.

Weber's original claim is that, as a result of the July 10 "Life Beneficiary Name Change" transfer request, she is entitled to the proceeds of the life insurance policy. Oliver's claim is that the July 10 transfer request was fraudulent and divested her of her interest in the policy. Therefore, regardless of whether Oliver's Counterclaim was properly styled as a counterclaim or

---

[1] Before discussing the Rule 12(b)(1) and Rule 12(b)(6) issues, the Court notes that there is some disagreement between the parties as to whether Oliver's Counterclaim should more properly be labeled as a cross-claim. As will be discussed later in this opinion, it is not necessary for the purposes of this Opinion to determine which label is proper as the outcome would be the same either way.

[2] There is also some disagreement among the parties as to how Oliver should properly be classified as a party. Her classification might be relevant for purposes of determining diversity of citizenship and whether her counterclaim should properly be set forth as a cross-claim. It is not necessary for purposes of this Opinion to determine whether she has been properly classified. Regardless of her classification there is diversity of citizenship, and the subject matter jurisdiction analysis is also not affected by whether her counterclaim should be set forth as a cross-claim.

whether it should have been set forth as a cross-claim, the Court has jurisdiction. If it is properly set forth as a counterclaim, as asserted by Oliver, it is a compulsory counterclaim since it arises out of the same transaction or occurrence that is the subject matter of the original claim. Fed. R. Civ. P. 13(a). If it would be proper to set forth the claim as a cross-claim, as asserted by Weber, the Court would still have jurisdiction because, again, it arises out of the same transaction or occurrence. Fed. R. Civ. P. 13(g).

Weber further asserts that if Oliver's Counterclaim were to be heard that Decedent's estate would be a necessary party. Pl.'s Reply Mem. in Supp. of Pl.'s Mot. to Dismiss at 2-3, ECF No. 25. If Decedent's estate were joined as a party there would no longer be complete diversity of citizenship since Decedent was a resident of Virginia along with Oliver and they would be opposing parties. However, it is not the case that Decedent's estate is a necessary party as to the life insurance policy transfer. Pursuant to Rule 19(a):

> (1) ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Here, Decedent's estate is not necessary in order for the Court to "accord complete relief" per subparagraph (A). Lincoln does not contest that it is liable to either Oliver or Weber, who are the only two parties who might receive funds from the life insurance

policy. Those funds would pass directly to Oliver or Weber, leaving Decedent's estate ultimately unaffected either way.[3] Therefore, complete relief can be accomplished among the existing parties.

### 2. Subject Matter Jurisdiction as to the Silver Bars and Cash

The Court does not have jurisdiction over Oliver's claims as to the silver bars or the $50,000 in cash. The Court would have jurisdiction if the claims were either valid compulsory counterclaims or cross-claims, both of which require that the claims arise from the same transaction or occurrence that is the subject matter of the original claim. *See* Fed. R. Civ. P. 13(a), (g). If they do not arise out of the same transaction or occurrence, then the claims would need to be permissive counterclaims with their own jurisdictional base. *See Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988). The claims as to the silver bars and cash do not provide the Court with any of those grounds for jurisdiction.

*a. The Claims do not Arise Out of the Same Transaction or Occurrence*

There are four inquiries to determine whether a claim arises from the same transaction or occurrence as the complaint:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Id.* (Citing *Sue & Sam Mfg. Co. v. B-L-S Const. Co.*, 538 F.2d 1048 (4th Cir.1976)).[4] The common thread running through all four tests is whether or not there is "evidentiary similarity."

---

[3] Additionally, Decedent's estate would not face any further liability. If the transfer of beneficiary status was not fraudulent, then clearly Oliver would have no further claim against the estate as to the life insurance policy. If the transfer was fraudulent, then by Virginia law (as will be discussed *infra*) Weber had notice of the fraudulent nature of the transaction, leaving her with no claim against the estate either.

[4] While *Painter* was concerned with the transaction or occurrence test as applied to compulsory counterclaims, the test is the same as applied to cross-claims. *See Kirkcaldy v. Richmond County Bd. of Educ.*, 212 F.R.D. 289, 295-296 (M.D.N.C. 2002) (Citing *Painter*, 863 F.2d at 331).

*Id.*

Here, the original claim is based on the July 10 transfer of beneficiary status for the life insurance policy. The claims concerning the silver bars and cash are based on the allegedly fraudulent conveyance of July 3. Those are two different transactions that would require different evidence for proof. For example, for each transaction Oliver would have to show that, on that particular day, Weber had either actual knowledge or inquiry notice of Decedent's fraudulent intent as to that day's transactions. *See Bank of Commerce v. Rosemary & Thyme, Inc.*, 239 S.E.2d 909, 912 (Va. 1978) (Finding that grantee must have notice of grantor's fraudulent intent). Because the claims as to the silver bars and cash do not share "evidentiary similarity" they do not arise from the same transaction or occurrence as the original claim. Therefore, they cannot be considered compulsory counterclaims or cross-claims.

### b. The Claims Have no Independent Jurisdictional Base

If Oliver's Counterclaim were properly set forth as a cross-claim then the jurisdictional inquiry would end there since the Rules do not allow for cross-claims unless they arise out of the same transaction or occurrence. *See* Fed. R. Civ. P. 13(g). However, even if Oliver's Counterclaim were properly set forth as a counterclaim, this Court would still lack jurisdiction. If the counterclaims do not arise from the same transaction or occurrence (and therefore are not compulsory) a court may still have jurisdiction if they are permissible counterclaims. Fed. R. Civ. P. 13(b). Permissible counterclaims require a jurisdictional base that is independent from the original claim. *Painter*, 863 F.2d at 331.

Since the claims are alleged to be founded in Virginia Code §§ 55-80 and 20-107.3,[5] that

---

[5] § 20-107.3 concerns equitable distribution, which is only available after a granting of divorce. *See Mayers v. Mayers*, 15 Va. App. 587, 590 (1993) ("It is equally clear 'that no decree of equitable distribution can be made before the parties are divorced.' *Parra v. Parra*, 1 Va.App. 118, 124, 336 S.E.2d 157, 160 (1985) (interpreting Code § 20-107.3(A)). Thus, '[t]he court's equitable distribution jurisdiction begins 'upon' the granting of the

8

jurisdictional base must be diversity as opposed to federal question jurisdiction. This Court does not generally adjudicate matters concerning domestic differences and would not exercise permissible jurisdiction in this matter. Moreover, the alleged amounts in controversy for the two potential permissive counterclaims are $10,000 for the silver bars and $50,000 for the cash. Both claim amounts, whether considered separately or in aggregate, fail to surpass the $75,000 amount required for diversity jurisdiction in 28 U.S.C. § 1332(a)(1). Because permissive counterclaims require independent jurisdictional bases and the claims as to the silver bars and the cash do not satisfy the amount-in-controversy requirement, there is no jurisdiction. *See* 6 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1423.

Additionally, even if the amount-in-controversy requirement were met, the inclusion of the claims would divest the proceedings of diversity of citizenship. Unlike with the claim concerning the life insurance policy, the claims as to the silver bars and cash do implicate the interests of Decedent's estate. If in fact those two transactions were fraudulent, the voiding of them would mean that ownership of the bars and cash would revert to Decedent's estate. Any claim that Oliver might have to the bars or cash would be by virtue of her taking from Decedent's estate via intestacy, subject to claims from other creditors. Alternatively, if the Court were to entertain Oliver's theory of equitable distribution then she would again only receive any portion of the bars or cash through Decedent (and by extension his estate). Either way, it is clear that the interests of Decedent's estate are implicated by those claims, making the estate a necessary party. As noted above, inclusion of Decedent's estate would destroy diversity of citizenship by virtue of Oliver sharing the same Virginia residency because her claim would be against the Decedent's estate.

---

divorce.' *Id.* at 125, 336 S.E.2d at 161."). However, Virginia courts have used § 20-107.3 as a guide to determine what type of property might be defined as "marital property" and therefore owed to a spouse under § 55-80. *See, e.g., Buchanan v. Buchanan*, 266 Va. 207, 212 (2003).

It is clear that a state court is better able to deal with domestic matters such as this. The claims for the silver bars and $50,000 cash are dismissed without prejudice.

### B. RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Weber next asks the Court to dismiss Oliver's Counterclaim pursuant to Rule 12(b)(6) because the counterclaim fails to state a claim upon which relief can be granted under Virginia law. Mot. to Dismiss, ECF No. 22. Since the Court does not have jurisdiction over the claims to the silver bars and cash it will only consider the Rule 12(b)(6) motion with regard to the life insurance beneficiary transfer. Oliver's response is that her claim arises under § 55-80 of the Code of Virginia.[6] Oliver would have a partial claim concerning the transfer of rights under the policy. The claim, however, would be limited to the cash surrender value of the policy at the time of the transfer of any rights. After hearing oral argument on this motion it appears that the life insurance policy in question did not have any cash surrender value. Therefore, Oliver has failed to state a claim upon which relief might be granted.

#### 1. Fraudulent Conveyance Law in Virginia

The relevant statute concerning fraudulent conveyance is § 55-80 of the Virginia Code, which reads:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

VA. CODE ANN. § 55-80 (West 2013).

---

[6] As noted in the previous footnote, § 20-107.3 provides guidance as to what property might be owed a spouse under § 55-80.

In *Fox Rest Associates, L.P. v. Little* the Supreme Court of Virginia provided the standard for how to establish fraudulent intent under § 55-80:

> In a suit to set aside a fraudulent conveyance, proof of the fraudulent intent must be "clear, cogent and convincing." *Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 289, 105 S.E. 677, 680 (1921). Fraud may be proved not only by direct evidence, but also by circumstantial evidence. *Id.* In fact, "[b]ecause of the difficulty of establishing 'actual intent,' evidence of fraud may be, and generally must be, circumstantial." *In re: Porter*, 37 B.R. 56, 63 (Bankr. E.D. Va.1984).
>
> Virginia courts have consequently relied upon presumptions of fraud, known as "badges of fraud," which consist of facts and circumstances that establish a prima facie case of fraudulent conveyance. *See, e.g., Hutcheson*, 129 Va. at 291, 105 S.E. at 681. The badges of fraud include:
>
>> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.
>
> *In re: Porter*, 37 B.R. at 63 (citing *Hutcheson*, 129 Va. at 291, 105 S.E. at 681).
>
> Once a party has introduced evidence to establish a badge of fraud, a prima facie case of fraudulent conveyance is established. *Temple v. Jones, Son & Co.*, 179 Va. 286, 298, 19 S.E.2d 57, 62 (1942). Once this is done, "the burden shifts, and the defendant must establish the *bona fides* of the transaction." *First National Bank of Bluefield v. Pressley*, 176 Va. 25, 28, 10 S.E.2d 526, 527 (1940).
>
> Notably, a familial relationship between the transferor and the transferee is not itself a badge of fraud. *Fowlkes v. Tucker*, 164 Va. 507, 514, 180 S.E. 302, 305 (1935). But "transactions between husband and wife must be *closely scrutinized*, to see that they are fair and honest and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors." *Id.* at 511, 180 S.E. at 303 (emphasis added). In such cases, "only *slight evidence* is required to shift the burden of showing its *bona fides.*" *Id.* at 514, 180 S.E. at 305 (emphasis added).
>
> Finally, in *Hutcheson*, we stated:
>
>> In order to avoid a conveyance, it is not necessary to prove that the grantee had positive knowledge of the grantor's fraudulent intent. It is sufficient to prove that the grantee had knowledge of

11

> facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of persons of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor.

*Id.* at 291, 105 S.E. at 680–81.

*Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 284-85 (2011).

Virginia case law is clear that a spouse may qualify as an "other person" under § 55-80 when separation or divorce is contemplated. *Buchanan*, 266 Va. at 212. It is not necessary that the enforcement mechanism under § 55-80 (i.e. a divorce proceeding) be available at the time of the fraudulent conveyance. *Id.* at 213. *Buchanan* also states that marital property, as defined by § 20-107.3, is generally property that a spouse may have a right to under § 55-80. *See Id.*

As to whether or not an insurance policy can constitute marital property, it appears that it can if marital assets were used to pay the premiums, regardless of whether the policy was separate property originally. *See Driskill v. Driskill*, 2003 Va. Cir LEXIS 380 (Norfolk Cir. May 29, 2003) ("By making premium payments during the marriage, the life insurance policies changed from separate property to marital property.").

However, while life insurance policies may constitute property in the context of § 20-107.3, under Virginia case law they do not constitute property under § 55-80. In *Coalter v. Willard* the Supreme Court of Virginia clearly found that "in Virginia a life insurance policy before it has matured, and which has no cash surrender value, is not property in contemplation of sections 5184 and 5185 [current sections 55-80 and 55-81, respectively] of the Code." 156 Va. 79, 83 (1931) (citing *Stigler's Ex'x v. Stigler*, 77 Va. 163 (1883), *Boisseau v. Bass*, 100 Va. 207 (1902), and *White v. Pacific Mutual Life Ins. Co.*, 150 Va. 849 (1928)). The only amounts which may be attached under § 55-80 are any premiums paid while debtor was insolvent or any cash

surrender value of a policy. *White v. Pacific*, 150 Va. at 862.

### 2. Oliver's Claims as to the Life Insurance Policy Under Virginia Law

Oliver's Counterclaim asserts that the July 10, 2013 transfer of beneficiary status from Oliver to Weber was a fraudulent conveyance under § 55-80 and divested Oliver of her interest in the policy. Br. in Opp'n to Pl.'s Mot. to Dismiss at 15, ECF No. 24. Oliver may be correct in that under Virginia law life insurance policies that have had the premiums paid out of marital assets may be marital property under § 20-107.3. Oliver is also correct in that § 20-107.3 appears to provide guidance as to what a spouse might be entitled to under § 55-80. However, *Coalter* clearly states that an un-matured life insurance policy is not property under § 55-80 except in so far as premiums were paid while debtor was insolvent or there is a cash surrender value of the policy.

Oliver attempts to distinguish *Coalter* by saying that the court in that case was only concerned with "a creditor pursuing a contract claim against a decedent's survivors" as opposed to this case where the creditor possesses a marital interest in the life insurance policy. Br. in Opp'n to Pl.'s Mot. to Dismiss at 15, ECF No. 24. Oliver appears to pull this distinction out of thin air. Nothing in *Coalter* seems to limit its holding to non-marital creditors. Additionally, nothing in the case law determining that a spouse can be an "other person" for purposes of § 55-80 speaks towards making such a distinction. The Court finds no problem with the assertion that Oliver might be an "other person." The issue is that the Supreme Court of Virginia determined in *Coalter* that, without making any distinction between "creditors" or "other persons," the benefits of an unmatured life insurance policy are not property under § 55-80.

It is not within this Court's power to change or add to what the Supreme Court of Virginia has determined to be the law in Virginia. Therefore, if the transfer was fraudulent, in so far as Oliver is concerned she would have a claim as to any cash surrender value of the policy if

she and her husband were not insolvent. Since after oral argument it appears that there was no cash surrender value of the policy, Oliver is left with no claim as to the life insurance policy. Therefore, Oliver has not stated a claim upon which relief might be granted under Virginia law and that claim is dismissed with prejudice.

## V. CONCLUSION

For the reasons set forth in this Opinion, Weber's Motion to Dismiss is **GRANTED** as to Melissa Oliver's claim concerning the life insurance, which claim is dismissed with prejudice, and is **GRANTED** as to Melissa Oliver's claims against the silver bars and $50,000 cash, which claims are dismissed without prejudice.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

Norfolk, VA
October ___, 2013